**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **YELENA SHCHEKINA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 08 C 6094** |
| | ) | |
| **WASHINGTON MUTUAL BANK, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

Yelena Shchekina has sued Washington Mutual Bank (WaMu), JPMorgan

Chase Bank (Chase), First Magnus Financial Corp., and Dmitry Ryaguzov to quiet title

in real estate located in Long Grove and for a declaratory judgment that, among other

things, none of the defendants has an interest in the real estate. The Court has

jurisdiction based on diversity of citizenship.

Shchekina contends, among other things, that her signature on loan and

mortgage documents executed in favor of First Magnus was forged. Chase is the

current holder of the First Magnus note and mortgage, having acquired them from

WaMu, which acquired them from First Magnus. Ryaguzov is alleged to be a current

tenant of the real estate.

Chase has counterclaimed, seeking a determination that if the First Magnus loan

and mortgage documents are found to have forged signatures, it should be found to be

subrogated to a previous note and mortgage in favor of HLB Mortgage, which the First

Magnus loan paid off. Alternatively, Chase asks to be subrogated to the last mortgage

in the chain that is determined to be valid. Chase also seeks an equitable lien in an amount equal to its own loan or the loan accompanying the mortgage to which it is found to be subrogated.

The case was reassigned to the undersigned judge after the unfortunate passing of its respected colleague, Judge William J. Hibbler. Chase has moved for partial summary judgment on its counterclaim. For the reasons stated below, the Court grants Chase's motion in part.

**Background**

In 2003, Shchekina and her husband purchased residential property located at 6517 Saddle Ridge Court, in Long Grove, Illinois. To purchase the property, they borrowed $472,000 from WaMu and executed a purchase money mortgage in WaMu's favor to secure repayment of the loan. Shchekina and her husband later refinanced the WaMu loan with Guaranty Residential Lending and executed a mortgage in Guaranty Residential's favor to secure the loan, also in the amount of $472,000. Shchekina admits that she signed the documentation relating to both the WaMu note and mortgage and the Guaranty Residential note and mortgage. Shchekina has testified that she was aware that the Guaranty Residential loan was used to pay off the WaMu loan.

In 2005-2006, there were three subsequent notes and mortgages relating to the Long Grove property. The first transaction involved a mortgage in favor of Guaranty Bank, which secured a loan in the amount of $592,000, at least part of which was used to pay off the balance of the Guaranty Residential loan. The next transaction was with HLB Mortgage and involved a loan of $650,000, which was used to pay off the

2

Guaranty Bank loan, and a mortgage in HLB's favor to secure repayment. The last transaction was a loan from First Magnus Mortgage in the amount of $650,000, which was used to pay off HLB, and a mortgage to secure repayment to First Magnus. At each juncture, when the new lender's mortgage was recorded, the prior lender's mortgage was released.

As indicated earlier, First Magnus later assigned its note and mortgage to WaMu. Chase acquired the note and mortgage via an FDIC receivership after WaMu failed.

Shchekina disputes the validity of Guaranty Bank, HLB, and First Magnus mortgages. Specifically, she claims that her signatures on the mortgages and loan documents were forged. Shchekina also denies knowing that these loans were taken out to pay off the balances of the prior loans.

Shchekina has also offered the testimony of James Hayes, a handwriting expert. Hayes reviewed only the First Magnus documents. He has testified that the signature on the First Magnus documents does not appear to be Shchekina's signature. Shcheckina has also provided affidavits from two friends and colleagues who state that they are familiar with her signature and that her purported signatures on the First Magnus, HLB, and Guaranty Bank mortgages are not actually her signatures.

**Discussion**

Chase has moved for summary judgment on its counterclaim, in which it seeks equitable subrogation and imposition of an equitable lien. Chase concedes for purposes of the present motion that Shchekina's signature on the First Magnus documents was forged. Chase argues, however, that it should be allowed to assert the rights of the mortgagee whose loan First Magnus paid off – in other words, that it should

be equitably subrogated to the HLB note and mortgage. In this regard, Chase contends that Shchekina has not offered evidence sufficient to give rise to a genuine factual dispute regarding the validity of the HLB mortgage. In the alternative, Chase asks the Court to find that Chase is subrogated to the position of the mortgagee on the last mortgage in the chain that the Court finds to be valid. Chase also requests imposition of an equitable lien in its favor.

On a motion for summary judgment, the Court "view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Trinity Homes LLC v. Ohio Cas. Ins. Co.,* 629 F.3d 653, 656 (7th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

**1.     Authenticity of signatures**

Shchekina has raised a genuine factual dispute concerning the authenticity of her signatures on the First Magnus, HLB, and Guaranty Bank mortgages and related loan documents. In this regard, she does not simply rely on her own denial that she signed the documents. With regard to the First Magnus mortgage, Shchekina has submitted an affidavit from a forensic document examiner, who says the signature does not appear to be hers. With regard to the HLB and Guaranty Bank documents, she has submitted affidavits from two colleagues who are familiar with her signature and state

that the signatures on these documents are not Shchekina's signatures. *See, e.g.,*
*United States v. Tipton*, 964 F.2d 650, 655 (7th Cir. 1992) (lay opinion testimony
regarding identification of handwriting is admissible). This is sufficient to give rise to a
genuine factual issue regarding the authenticity of Shchekina's purported signatures on
those documents. *Cf. United States v. Binzel*, 907 F.2d 746, 749-50 (7th Cir. 1990)
(disregarding affidavit of person who claimed familiarity with party's signature but did
not "identify a relationship or course of business . . . that would reasonably familiarize
him with [the] signature").

Chase points out that the signatures in question (or at least some of them) were
notarized. It invokes Illinois law to the effect that a notary's certification of
acknowledgment of a signatory can only be overcome by clear and convincing evidence
and by disinterested witnesses. *See Witt v. Panek*, 408 Ill. 328, 333, 97 N.E.2d 283,
285 (1951). In *U.S. Bank Nat'l Ass'n v. Cook*, No. 07 C 1544, 2009 WL 35286, at *3
(N.D. Ill. Jan. 6, 2009), the court considered a summary judgment motion in a case in
which a party claimed that a notarized signature had been forged. The notary testified
or submitted an affidavit regarding the process he followed in notarizing signatures, and
each side submitted testimony from a handwriting expert, one of whom said the
signature was forged and the other of whom said it was genuine. The court concluded
that this evenly-balanced testimony could not establish forgery by clear and convincing
evidence and thus granted summary judgment. *Id.*

Putting aside whether this Court agrees with the decision in *Cook*, the case is
significantly different from this one. In the present case, there is no affidavit or

5

testimony from the notaries (who knows even whether *their* signatures are valid?), and

Chase has offered no evidence of its own regarding the genuineness of Shchekina's

purported signatures, aside from the notaries' *jurats*.  The Court acknowledges that

clear and convincing evidence is a significant burden for Shchekina to clear.  On a

summary judgment motion, however, the Court is constrained to conclude that there is

a genuine issue of fact regarding the genuineness of Shchekina's signatures not only

on the First Magnus mortgage but also on the HLB and Guaranty Bank documents.

**2.      Equitable subrogation / equitable lien**

This, however, does not end the matter.  As the Court has indicated, Chase

seeks equitable subrogation to the position of the last unchallenged mortgage.

Shchekina does not challenge the genuineness of her signature on the Guaranty

Residential mortgage, nor does she otherwise attack that mortgage or the related loan.

The Court therefore considers whether Chase may be deemed to be equitably

subrogated to the position of that mortgagee.

In Illinois, common law subrogation is generally limited to certain defined types of

cases, such as those involving insurers, sureties, and principals.  *See Home Sav. Bank

of Chi. v. Bierstadt*, 168 Ill. 618, 623, 48 N.E. 161, 161-62 (1897).  In addition, Illinois

recognizes what it calls the principle of "conventional subrogation," which results from

"an equitable right springing from an express agreement with the debtor, by which one

advances money to pay a claim for the security of which there exists a lien, and by such

agreement he is to have an equal lien to that paid off."  *Id.* at 623, 48 N.E. at 162.

Chase's claim falls into neither of these categories.

The Illinois courts and the Seventh Circuit have, however, recognized the principle of "equitable subrogation" under Illinois law.  The Seventh Circuit has described this as follows:

> The right of subrogation originated in equity.  It allowed a person who was compelled to pay someone else's claim or debt to succeed to that person's rights, so that the payor could recover from the individual whose conduct gave rise to the claim or debt.  In this way, courts sought to achieve substantial justice, "by placing ultimate responsibility for the loss upon the one against whom in good conscience it ought to fall."  Subrogation can arise from an agreement (express or implied) between the subrogor and subrogee, in which case it is often referred to as conventional or contractual subrogation.  *But the right to subrogation does not invariably depend on the existence of an agreement; equitable subrogation can arise simply from the fact of payment.*

*Mut. Service Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 626 (7th Cir. 2001) (applying Illinois law) (emphasis added; citations omitted).

The next question is whether it is appropriate to apply equitable subrogation in this case.  "Equitable subrogation is a creature of chancery that is utilized to prevent unjust enrichment.  There is no general rule that can be laid down to determine whether a right of equitable subrogation exists, since the right depends upon the particular equities of each particular case."  *Aames Capital Corp. v. Interstate Bank of Oak Forest*, 315 Ill. App. 3d 700, 706, 734 N.E.2d 493, 498 (2000).  "[E]quitable subrogation prevents the unearned enrichment of one party at the expense of another and will be granted only where an equitable result will be reached."  *Id.* at 707, 734 N.E.2d at 498. As the Illinois Appellate Court has stated, "[t]he application of the doctrine of equitable subrogation does not depend upon any set of circumstances but depends upon the equities of each individual case."  *Union Planters Bank v. FT Mtg. Cos.*, 341 Ill. App. 3d

921, 925, 794 N.E.2d 360, 364 (2003).

The Illinois Supreme Court appears to have recognized the principle of equitable subrogation in *Ohio Nat'l Life Ins. Co. v. Bd. of Ed. Of Grant Comm. High Sch. Dist. No. 124*, 387 Ill. 159, 55 N.E.2d 163 (1944). In that case, the court noted that "a mere stranger or volunteer can not [sic], by paying a debt for which another is bound, be subrogated to the creditor's rights in respect to the security given by the real debtor. But if the person who pays the debt is compelled to pay for the protection of his own interest and rights, then the substitution should be made." *Id.* at 178, 55 N.E.2d at 171. In the present case, each mortgagee, in turn, was compelled to pay the prior mortgagee to protect its own interest in the mortgaged property.

Even if Shchekina's signature was forged on the Guaranty Bank, HLB, and First Magnus mortgages, she received a benefit in each instance, in that any liability she might have had with regard to the previous mortgage was extinguished by the later mortgagee. To put it a bit more clearly, Shchekina concedes that she executed the Guaranty Residential note and mortgage, and thus she was liable to Guaranty Residential. Even though her signature was allegedly forged on the Guaranty Bank documents, the execution of those documents extinguished her liability to Guaranty Residential. Then, when the HLB note and mortgage were executed, any liability that Shchekina might have had to Guaranty Bank was extinguished. Finally, when the First Magnus note and mortgage were executed, any liability that she might have had to HLB was extinguished. If Shchekina now is found to hold the property free and clear of Chase's (First Magnus's) interest, she would be getting the benefit of being off the hook on the prior debts and mortgages without having given anything in return. Chase, on

8

the other hand, would be left holding the bag. Chase advanced funds that were used to pay off a prior loan, which in turn (indirectly) paid off a loan on which Shchekina was concededly liable – the Guaranty Residential loan – and yet Chase would be unable to recover anything from Shchekina and would have no lien on the property.

The Court has found two cases from states other than Illinois that apply equitable subrogation in similar circumstances. In *Chase v. Ameriquest Mortg. Co.*, 155 N.E. 19, 921 A.2d 369 (2007), the plaintiff and her then husband purchased a home. They later executed a mortgage note, using the home as collateral. Several years later, the husband executed a new note and mortgage with Ameriquest and thereby paid off the original mortgage. He forged his wife's name on the mortgage documents. *Id.* at 20, 921 A.2d at 371. The court noted that "despite the forgery, a benefit was conferred on Ms. Chase when [defendant] paid her valid mortgage." *Id.* at 23, 921 A.2d at 374 (internal quotation marks omitted). The court concluded that Ameriquest was equitably subrogated to the original mortgage, stating that it had met the requirements for application of equitable subrogation: Ameriquest was not a "volunteer" because it paid the earlier mortgage to protect its interest in the home as collateral; it paid a debt on which it was not primarily liable; it paid the entire debt (the earlier mortgage loan); and there was no injustice vis-à-vis Ms. Chase because she had benefitted. *Id.* at 27-28, 921 A.2d at 376-77. The court ruled that Ameriquest was entitled to recover the amount for which Ms. Chase would have been liable on the earlier loan,[1] because "[t]o

---

[1] The court declined to hold Ms. Chase liable for the entire amount of the Ameriquest loan, which was larger than the earlier loan that Ameriquest had paid off, saying that she "should not be made to bear an increased financial burden because Ameriquest was not vigilant in making sure that all of the signatures on the mortgage instrument" were valid. *Chase*, 155 N.H. at 28, 921 A.2d at 377.

hold otherwise would potentially yield a windfall for the plaintiff and could encourage collusive deception against lenders." *Id.* at 28, 921 A.2d at 377.

The Court in *Chase* relied in part on the Florida Supreme Court's decision in *Palm Beach Sav. & Loan Ass'n, F.S.A. v. Fishbein*, 619 So. 2d 267 (Fla. 1993), which addressed a similar scenario. Mr. Fishbein acquired a home in his own name, assumed a prior mortgage, and executed a purchase money mortgage. Later he and Ms. Fishbein executed another mortgage that acknowledged the existence of the prior mortgages. Several years later, Mr. Fishbein borrowed a large sum from the plaintiff bank and secured the debt with a mortgage on the home. Despite knowing that the Fishbeins were involved in divorce proceedings, the bank "permitted Mr. Fishbein to obtain his wife's signature on the mortgage without requiring her to sign the document in the bank's presence." *Id.* at 268. Mr. Fishbein forged his wife's signature on the mortgage. During later foreclosure proceedings (which took place after Mr. Fishbein had quitclaimed his interest during divorce proceedings), the trial court gave the bank an equitable lien on the home to the extent its funds were used to satisfy the prior mortgage. The Florida Supreme Court upheld this ruling. It noted that based on the ruling, Ms. Fishbein "stands in no worse position than she stood before the execution of the mortgage." *Id.* at 270. It concluded that she was not entitled to the windfall that she would obtain if she were to hold the property free and clear of any interest on the part of the bank. *Id.* at 271.

The Court believes that Illinois law would follow a similar course. The Seventh Circuit has made it clear that Illinois recognizes equitable subrogation, and that doctrine

10

has also been recognized (though only infrequently) by the state courts. "[E]quity will not tolerate an unjust enrichment," *see People ex rel. Palmer v. Peoria Life Ins. Co.*, 376 Ill. 517, 527, 34 N.E.2d 829, 834 (1941), and that is precisely what would occur were Shchekina to obtain a ruling that she holds the property free and clear of any interest on the part of Chase. Specifically, Shchekina is off the hook for the last mortgage she concedes that she executed – the Guaranty Residential mortgage – and that is so because that mortgage was paid off by another mortgagee whose documents she denies signing. She obtained a benefit from the forgeries to that extent. And because Chase (via First Magnus) effectively stepped into the place of the earlier mortgagees, it will suffer an unjust harm if it is not equitably subrogated to the position of Guaranty Residential.

Chase would likewise suffer an unjust harm were it not given an equitable lien to the extent of the amount that was due on the Guaranty Residential loan at the time it was paid off. Under Illinois law, equitable liens arise in two situations:

> First, [an equitable] lien arises where the parties express in writing their intention to make real or personal property, or some fund, the security for a debt, or where there has been a promise to convey or assign the property as security. Second, equity recognizes such a lien without an express agreement between the parties, which arises wholly from general considerations of fairness and justice. In either case, the essential elements of an equitable lien are: (1) a debt, duty, or obligation owing by one person to another, and (2) a *res* to which that obligation attaches.

*Paine/Wetzel Assoc. v. Gities,* 174 Ill. App. 3d 389, 393, 528 N.E.2d 358 (1988) (internal citations and quotation marks omitted). There is no express agreement here, but the requirements for an equitable lien are met: the existence of a debt arises from the Court's determination that Chase is equitably subrogated to the Guaranty

Residential mortgage, and the *res*, of course, still exists.

The Court therefore concludes that Chase is entitled to imposition of an equitable lien against the property. Based on the current record, the amount secured by the lien would be the amount that was due on the Guaranty Residential loan when it was paid off by way of the Guaranty Bank loan (not more than $472,000, and perhaps less). The Court notes that were it determined after a trial that Shchekina's signatures on the Guaranty Bank or the HLB mortgage documents are valid, Chase would be entitled to an equitable lien in a greater amount.

## Conclusion

For the reasons stated above, the Court grants in part defendant JPMorgan Chase Bank's motion for partial summary judgment and determines that defendant is subrogated to the position of Guaranty Residential Lending and has an equitable lien securing the amount due to Guaranty Residential loan that was paid by Guaranty Bank. The case is set for a status hearing on August 16, 2012 at 9:30 a.m. Counsel for all parties remaining in the case are to attend and are to be prepared to address what issues remain for determination in the case.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 7, 2012